IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| Gary D. Daniels, | : |
| | : Case No. 1:20-cv-691 |
| Plaintiff, | : |
| | : Judge Susan J. Dlott |
| v. | : |
| | : Order Granting State Farm's |
| Carroll Vernatter, *et al.*, | : Motion for Summary Judgment |
| | : |
| Defendants. | : |

This matter is before the Court on the Motion for Summary Judgment (Doc. 16) filed by Defendant State Farm Mutual Automobile Insurance Company ("State Farm"). Plaintiff Gary D. Daniels filed a Memorandum in Opposition (Doc. 18) to which State Farm filed a Reply (Doc. 19). State Farm moves the Court to determine as a matter of law that Daniels waived his right to uninsured motorists ("UM") coverage under two policies issued to him by State Farm in accordance with Kentucky Revised Statute § 304.20-020. For the reasons that follow, the Court will **GRANT** summary judgment to State Farm.

I. BACKGROUND

A. Facts

The parties have stipulated to the relevant facts, which the Court will re-state herein. (Doc. 15). Daniels, a resident of Kentucky, was insured under Kentucky policies of insurance with State Farm. State Farm is a foreign corporation with its principal place of business in Illinois and authorized to do business in Kentucky and Ohio. Defendant Carroll Vernatter and Defendant James Terry are and were residents of Ohio.

On or about the morning of September 10, 2019, Vernatter was driving a 2004 Chevrolet Malibu in the left, westbound lane of Route 60 in Wayne County, West Virginia. Upon

1

information and belief, Terry was the owner of the Chevrolet Malibu being driven by Vernatter. Daniels was driving his 2007 Honda motorcycle, traveling eastbound on Route 60 in Wayne County, West Virginia. According to the police report, Vernatter failed to yield to oncoming traffic by turning left directly in front of Daniels causing Daniels to collide with the passenger side of the vehicle operated by Vernatter. Daniels was seriously injured in the collision. State Farm does not dispute Vernatter's liability for the accident for purposes of this Motion.

Upon information and belief, neither Terry nor Vernatter had insurance coverage on the vehicle at the time of the collision. Daniels was insured through the three State Farm policies in the amount of $100,000.00 under each policy: (1) State Farm Policy 1995801-C07-17 for a Honda motorcycle, (2) State Farm Policy 3189453-A03-17C for a Chevrolet Corvette, and (3) State Farm Policy 0393364-A16-17G for a Honda Ridgeline. (Docs. 18-1, 18-2, and 18-3.) The policies were issued in Kentucky and provided for payment, subject to the terms and conditions of the policies and Kentucky law. Only Policy 0393364-A16-17G expressly provided UM coverage. (Doc. 18-3 at PageID 131.)

For purposes of this Motion, State Farm does not dispute that the tortfeasor, Vernatter, was an uninsured motorist as defined by the above-referenced policies of insurance and Kentucky Revised Statute § 304.20-020 with respect to the collision. State Farm paid Daniels the policy limits of his UM benefits under Policy 0393364-A16-17G. State Farm, however, denied Daniels UM coverage under Policy 1995801-C07-17 and Policy 3189453-A03-17C on the grounds that he rejected in writing UM coverage for those policies.

Daniels had signed an Acknowledgment of Coverage Rejection applicable to Policy 1995801-C07-17 for the Honda motorcycle that stated in full:

> Kentucky law requires that no automobile liability policy or motor vehicle
> liability policy shall be issued or delivered unless it contains Uninsured Motor

2

> Vehicle Coverage which pays damages due to bodily injury, sickness, disease or death which an insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle.
>
> The law, however, allows you to reject this coverage.
>
> If Uninsured Motor Vehicle Coverage is rejected on this policy, a claim for an insured's bodily injury damages may be presented under the Uninsured Motor Vehicle Coverage of any other policy under which we insure you or any relative who resides primarily with you.
>
> Unless you reject Uninsured Motor Vehicle Coverage, the limits of coverage shall be no less than the minimum limits required by Kentucky law. The limits may be increased up to the limits provided in your policy for bodily injury liability coverage. The maximum available limits for Uninsured Motor Vehicle Coverage are $250,000 per person and $500,000 per accident unless higher limits were selected prior to June 1, 1996.
>
> I have read and I understand the above explanation of Uninsured Motor Vehicle Coverage. I also understand the options available to me.
>
> **I have the right to reject Uninsured Motor Vehicle Coverage, and I reject such coverage.**
>
> I understand and agree that this coverage rejection shall be binding on all persons insured under this policy.
>
> I understand and agree that this rejection of coverage shall be applicable to the policy of insurance on the vehicle described below, to all future policies which reinstate, amend, replace, or which are substituted for that policy or its replacements, and to all future renewals of such policies, unless I request a change of the coverage in writing.

(Doc. 16 at PageID 99 (emphasis in the original).)

Daniels also had signed an Acknowledgment of Coverage Rejection that by its terms applied to a policy of insurance on a Chevrolet Camaro. (*Id.* at PageID 98.) This second Acknowledgment of Coverage Rejection is similar, but not identical, to the first. The final paragraphs provided as follows:

> I have read and I understand the above explanation of Uninsured Motor Vehicle Coverage and the options available to me.
>
> **I acknowledge and agree that I have the right to reject Uninsured Motor Vehicle Coverage, and I reject such coverage in its entirety.**

3

> I understand and agree that, unless a named insured requests such coverage in writing, this acknowledgment of coverage rejection shall be:
>
> > 1) binding on all persons insured under this policy; and
> >
> > 2) applicable to the policy of insurance on the vehicle described below, to any renewal policy or any supplemental to a renewal policy issued by the same insurer.

(*Id.* (emphasis in the original).) State Farm asserts that Policy No. 3189453-A03-17C insuring the Chevrolet Corvette was a replacement for the Camaro policy. (*Id.* at PageID 71 n.1.)

**B.   Procedural History**

Daniels filed this suit against Vernatter, Terry, and State Farm on September 4, 2020. (Doc. 1.) Daniels asserted a claim for negligence against Vernatter, a claim for negligent entrustment against Terry, and a claim for UM coverage against State Farm. (*Id.* at 4–6.) Only State Farm has been served with a copy of the Complaint. (Docs. 7, 10, 14.)

The Court referred the case to the Magistrate Judge for all pretrial motions except for summary judgment. The Magistrate Judge conducted a scheduling conference with the parties on November 9, 2020, and she agreed that State Farm could move for summary judgment immediately on the legal issue of whether State Farm was required to provide UM coverage to Daniels. State Farm's Motion for Summary Judgment is fully briefed and ripe for adjudication.

**II.   ANALYSIS**

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if "there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Both parties agree that Kentucky law governs this dispute. (Doc. 15 at PageID 67.)

The issue before the Court is whether State Farm must provide UM coverage to Daniels under Policy 1995801-C07-17 and Policy 3189453-A03-17C by operation of Kentucky Revised

4

Statute § 304.20-020. Kentucky law requires that every automobile policy provide UM coverage unless such coverage is rejected in writing:

> No automobile liability or motor vehicle liability policy of insurance insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto, in limits for bodily injury or death set forth in KRS 304.39-110 under provisions approved by the commissioner, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom; *provided that any named insured shall have the right to reject in writing such coverage*; and provided further that the rejection shall be valid for all insureds under the policy, and unless a named insured requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal, reinstatement, substitute, replacement, or amended policy issued to the same named insured by the same insurer or any of its affiliates or subsidiaries.

Ky. Rev. Stat. § 304.20-020(1) (emphasis added).

"[T]he statute was enacted primarily to ensure that UM coverage would be a part of every named insured's policy of insurance unless that insured knowingly waived his or her statutory right to receive it." *Boarman v. Grange Indem. Ins. Co.*, 437 S.W.3d 748, 752 (Ky. Ct. App. 2014). State Farm argues that Daniels is not entitled to UM coverage under Policy 1995801-C07-17 and Policy 3189453-A03-17C because he rejected such coverage by signing the written Acknowledgments of Coverage Rejection. The evidence is straightforward that Daniels executed an Acknowledgment of Coverage Rejection rejecting UM coverage on the Honda motorcycle under Policy 1995801-C07-17. (Doc. 16 at PageID 99; Doc. 18-1 at PageID 111.) The evidence is less straightforward as to Policy 3189453-A03-17C.

The parties agree that Daniels executed the second Acknowledgment of Coverage Rejection rejecting UM coverage on the Camaro policy. (Doc. 16 at PageID 98.) State Farm asserts, and Daniels does not challenge, that the Camaro policy was replaced by Policy 3189453-

5

A03-17C on the Chevrolet Corvette. (*Id.* at PageID 71 n.1; Doc. 18-2 at PageID 126.) The Acknowledgment of Coverage Rejection for the Camaro policy states in the last paragraph that the rejection applies to renewal policies on the Camaro, but the form does not address replacement policies. (Doc. 16 at PageID 98.) Nonetheless, Kentucky Revised Statute § 304.20-020(1) provides that a coverage rejection "shall be valid for all insureds under the policy, and unless a named insured requests such coverage in writing, such coverage need not be provided in or supplemental to a . . . replacement . . . policy issued to the same named insured by the same insurer." Daniels does not assert or provide evidence that he requested UM coverage in writing for Policy 3189453-A03-17C, the replacement for the Camaro policy. Likewise, the Declarations Page for Policy 3189453-A03-17C does not list UM coverage as being provided. For these reasons, the Court agrees with State Farm that the Acknowledgment of Coverage Rejection on the Camaro policy also applied to its replacement, Policy 3189453-A03-17C, pursuant to Kentucky law.

The Court turns, then, to Daniels's arguments that the written Acknowledgments of Coverage Rejection should not be enforced as waiving his right to UM coverage under Policy 1995801-C07-17 and Policy 3189453-A03-17C. To begin, Daniels refers to the waivers as "obscure," but both written Acknowledgments of Coverage Rejection are on full sheets of standard-size paper and use legible typeface. (Doc. 16 at PageID 98–99; Doc. 18 at PageID 108.) The key sentence rejecting UM coverage is bolded in both. (*Id.*) The terms of the Acknowledgments of Coverage Rejection are not ambiguous.

Daniels also suggests that State Farm should have better explained to him his statutory right to UM coverage and the effect of signing the written rejections, but the Kentucky Court of Appeals already repudiated a similar argument in an earlier case:

6

> The circuit court focused on Bailey's allegation that Midwest never explained the meaning of uninsured motorist coverage to him. However, Bailey did sign the application for liability insurance and the rejection of uninsured motorist coverage. The rejection of uninsured motorist coverage section of the application that Bailey signed recites that: "I understand Uninsured Motorist Coverage and I do not desire it on this policy." It is axiomatic that all persons are presumed to know the law. Furthermore, the mere lack of knowledge of the contents of a written contract for insurance cannot serve as a legal basis for avoiding its provisions. The circuit court's reliance on Bailey's allegation of ignorance was misplaced because Bailey could not rely on parol evidence to avoid the effect of his waiver of uninsured motorist coverage.

*Midwest Mut. Ins. Co. v. Wireman*, 54 S.W.3d 177, 181–82 (Ky. Ct. App. 2001) (citations omitted). Daniels is bound by his rejection of UM coverage under the *Wireman* precedent despite his argument that the effect of the waivers was not explained to him.

Finally, Daniels contends that he could not have rejected his right to UM coverage because State Farm first did not make specific offers of UM benefits with defined policy limits and premium costs. That is, Daniels argues that a specific, detailed offer of UM coverage is a prerequisite to a valid rejection. He relies primarily on a Sixth Circuit case interpreting Ohio law to support this argument. The Sixth Circuit stated in 2003 that the Ohio law then in effect required insurers to offer UM coverage with "a brief description of the coverage, the premium for that coverage, and an express statement of the UM[ ] coverage limits" before coverage could be validly rejected. *Hindall v. Winterthur Int'l*, 337 F.3d 680, 684–685 (6th Cir. 2003) (applying *Linko v. Indemnity Ins. Co. of N. Am.*, 90 Ohio St. 3d 445, 739 N.E.2d 338 (2000)); *see also Kemper v. Mich. Millers Mut. Ins. Co.*, 98 Ohio St. 3d 162, 781 N.E.2d 196, 2002-Ohio-7101, at ¶¶ 2, 4.

However, Daniels has not cited any federal or Kentucky state decision imposing the Ohio requirements in a Kentucky UM insurance case. This likely is because the Ohio statute was materially different than the Kentucky statute. The Ohio law then in effect stated that no automobile policy could be delivered or issued for delivery unless UM coverage was "*offered* to

7

persons insured under the policy." Ohio Rev. Code § 3937.18(A) (2001) (emphasis added). It further stated that a named insured could reject or accept coverage "*as offered* under division (A) . . . ." *Id.* § 3937.18(C) (emphasis added). There was a clear requirement under Ohio law that an offer be made.

On the other hand, Kentucky Revised Statute § 304.20-020 does not use the term "offer." It states that no automobile policy shall be delivered or issued without UM coverage "provided that any named insured shall have the right to reject in writing such coverage." Ky. Rev. Stat. § 304.20-020(1). It does not by its terms require that a UM coverage offer be made, much less specify the terms which must be included in the offer, before the right to coverage can be rejected. Instead, the law simply states that UM coverage must be provided in the policy unless it is rejected in writing. *Id.* It would be an unjustified expansion of § 304.20-020 to impose the specific Ohio requirements for a UM coverage offer as a prerequisite to the right to reject such coverage under Kentucky law.

It also bears noting that none of the Kentucky cases that Daniels cites require the insurer to provide an explicit offer listing the potential UM coverage limits and premium costs. Instead, Kentucky cases refer generally to the insurers' duty to provide UM coverage in automobile policies unless it is rejected. *See, e.g., Boarman*, 437 S.W.3d at 752 ("[T]he only reasonable interpretation of KRS 304.02–020(1) mandates UM coverage for every named insured listed on a policy of liability insurance unless that named insured has individually signed a waiver for UM coverage.") Kentucky cases that use the term "offer" appear to use it as a synonym for the terms "provide" or "include." *See e.g., Moore v. Globe Am. Cas. Co.*, 208 S.W.3d 868, 870 (Ky. 2006) (stating that insurers could "offer" UM coverage in the basic package or as supplemental coverage, but that a rejection of coverage controlled); *Henry v. Travelers Pers. Sec. Ins. Co.*, No.

8

2016-CA-001939-MR, 2018 WL 678282, at *3 (Ky. Ct. App. Feb. 2, 2018) ("[The Kentucky legislature] has a preference that drivers purchase UM coverage; this is evinced by the fact that UM coverage must be offered in an insurance contract and that an insured must reject such coverage in writing."); *Ky. Farm Bureau Mut. Ins. Co. v. Gray*, 814 S.W.2d 928, 930 (Ky. Ct. App. 1991) ("[I]nsurers are required to offer uninsured motorist coverage to all insureds, including those injured while 'using' their vehicles.") This Court will not read a requirement to provide a written or specific offer of UM coverage into Kentucky Revised Statute § 304.20-020 that the Kentucky General Assembly did not include.

For these reasons, the Court concludes that Daniels rejected UM coverage under Policy 1995801-C07-17 and Policy 3189453-A03-17C in accordance with Kentucky Revised Statute § 304.20-020 when he signed the written Acknowledgments of Coverage Rejection.

### III. CONCLUSION

Daniels's claim against State Farm for uninsured motorists coverage fails as a matter of law. Accordingly, State Farm's Motion for Summary Judgment (Doc. 16) is **GRANTED**.

**IT IS SO ORDERED.**

BY THE COURT:

*Susan J. Dlott*
Susan J. Dlott
United States District Judge